Larry Austin THOMAS, Sr., Appellant,

v.

The STATE of Texas, State.

Nos. 2–99–162–CR to 2–99–164–CR.

Court of Appeals of Texas,
Fort Worth.

Nov. 2, 2000.

Tim Curry, Crim. Dist. Atty., Charles M. Mallin, Asst. Crim. Dist. Atty., Chief of the Appellate Section, Danielle A. LeGault, Charles Brandenberg, Ann Wright, Asst. Crim. Dist. Attys., Fort Worth, for Appellant.

John D. Nation, Dallas, for Appellee.

Panel A: CAYCE, C.J.; RICHARDS and HOLMAN, JJ.

## OPINION

DIXON W. HOLMAN, Justice.

Appellant Larry Austin Thomas, Sr. appeals his convictions for solicitation of capital murder, theft of property of the value of more than $200,000, and money laundering. In his first three points, Appellant argues that the evidence is legally insufficient to support his convictions. In point four, he claims the trial court abused its discretion by denying his motion for new trial. Finding no reversible error, we affirm the trial court's judgments.

## I. LEGAL INSUFFICIENCY

In reviewing the legal sufficiency of the evidence to support a conviction, we view the evidence in the light most favorable to the verdict. *Narvaiz v. State*, 840 S.W.2d 415, 423 (Tex.Crim.App.1992), *cert. denied*, 507 U.S. 975, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993). The critical inquiry is whether, after so viewing the evidence, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *McDuff v. State*, 939 S.W.2d 607, 614 (Tex.Crim.App.), *cert. denied*, 522 U.S. 844, 118 S.Ct. 125, 139 L.Ed.2d 75 (1997). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

The legal sufficiency of the evidence is a question of law. The issue on appeal is not whether we believe the State's evidence or believe that the defense's evidence outweighs the State's evidence. *Wicker v. State*, 667 S.W.2d 137, 143 (Tex. Crim.App.), *cert. denied*, 469 U.S. 892, 105 S.Ct. 268, 83 L.Ed.2d 204 (1984); *see also Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim.App.1991). Our duty is not to reweigh the evidence from reading a cold record but to act as a due process safeguard ensuring only the rationality of the fact finder. *Williams v. State*, 937 S.W.2d 479, 483 (Tex.Crim.App.1996). The verdict may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt. *Matson*, 819 S.W.2d at 846.

In Appellant's first point, he challenges the legal sufficiency of the evidence to sustain his conviction for solicitation of capital murder. Appellant argues that the evidence was insufficient because the State's witnesses were accomplice witnesses and there was no evidence to corroborate their testimony as required by TEX.PENAL CODE ANN. § 15.03(b) (Vernon

1994) and TEX.CODE CRIM .PROC.ANN. art. 38.14 (Vernon 1979).

In order to support a conviction for criminal solicitation pursuant to section 15.03(a), the evidence must establish that the defendant acted with the specific intent that capital murder be committed. *Richardson v. State*, 681 S.W.2d 683, 687 (Tex.App.—Houston [14th Dist.] 1984), *aff'd*, 700 S.W.2d 591 (Tex.Crim.App.1985). The statute does not allow a conviction based solely on the uncorroborated testimony of the person allegedly solicited. The circumstances surrounding the solicitation must strongly corroborate the solicitation itself and the actor's intent that the other person act on the solicitation. TEX.PENAL CODE ANN. § 15.03(b); *Saunders v. State*, 572 S.W.2d 944, 954–55 (Tex. Crim.App.1978); *Sheffield v. State*, 847 S.W.2d 251, 258 (Tex.App.—Tyler 1992, pet. ref'd). To determine if the corroboration is sufficient the accomplice testimony must be eliminated from consideration and it must be determined whether there is other incriminating evidence tending to connect the defendant with the crime. *Adams v. State*, 685 S.W.2d 661, 665 (Tex. Crim.App.1985); *Richardson*, 700 S.W.2d at 594. It is not necessary that the corroboration directly link the defendant with the crime or that it be sufficient evidence in itself to establish guilt. *Richardson*, 700 S.W.2d at 594. The court should consider all of the non-accomplice evidence even if it is entirely circumstantial. *Id.*

The State's evidence regarding the criminal solicitation charge was elicited from, among others, five witnesses that Appellant had approached while in custody at the Tarrant County Jail: (1) Kenneth Harrell; (2) Kevin H. Longenecker; (3) Charles Mayberry; (4) Michael Jones; and (5) Ricky Owens. Appellant was charged with soliciting Harrell and Longenecker to murder Carol Condello.

Harrell testified that Appellant asked him for help in making Condello disappear. Harrell stated that Appellant told him that

Condello often carried as much as $20,000 with her and that Appellant would pay another $20,000 for her murder. Harrell also stated that Appellant showed him documents that demonstrated that he had a nice house and several cars. Harrell testified that he thought that Appellant had the funds to pay for the murder and that he was serious about killing Condello. Harrell further testified that he never agreed to murder Condello and that he told a Tarrant County Jail officer about Appellant's solicitation.

Longenecker testified that Appellant approached him in the Tarrant County Jail and told him about Appellant's problems with a woman over fraud charges. Longenecker stated that Appellant told him that he would pay between $50,000 and $100,000 to have her "knocked off." Longenecker testified that he believed Appellant was asking him if he would kill Condello or if he knew someone who would. Longenecker stated that he ended the conversation and later that evening told a Tarrant County Jail officer about the conversation and she insisted that he contact the district attorney's office.

Mayberry testified that Appellant told him that he wanted to get rid of Condello and that Appellant asked him if he knew anyone who would kill her. Mayberry testified that Appellant told him that he would pay $50,000 for Condello to be killed and then raised the amount to $75,000. Mayberry also stated that Appellant showed him documents that demonstrated that the police had taken currency and cars from Appellant. Mayberry testified that Appellant told him that he would get his money and property back if Condello was taken care of. Mayberry stated that he believed Appellant was serious about wanting Condello killed so he told an officer in the Tarrant County Jail about the conversation. Mayberry testified that he never agreed to help Appellant kill Condello.

Jones testified that Appellant told him that the reason he was in jail was because of a woman named Carol (Condello). Jones stated that Appellant told him that "it would be nice if she was out of the way or if she could just be gotten out of the way." Jones testified that Appellant never directly discussed payment for the murder. He also testified that Appellant never directly asked him to kill or cause Condello to be killed.

The State also called Owens to testify about the conversations that he had with Appellant about Condello. Owens stated that Appellant told him that he "would like something done" to the person who got him thrown in jail, but he was not specific about what he wanted done and he never mentioned the name Carol Condello. Owens also acknowledged there was a mention of money with regard to the statement that Appellant made to him.

Section 15.03(a) and (b) of the penal code provides:

(a) A person commits an offense if, with intent that a capital felony or felony of the first degree be committed, he requests, commands, or attempts to induce another to engage in specific conduct that, under the circumstances surrounding his conduct as the actor believes them to be, would constitute the felony or make the other a party to its commission.

(b) A person may not be convicted under this section on the uncorroborated testimony of the person allegedly solicited and unless the solicitation is made under circumstances strongly corroborative of both the solicitation itself and the actor's intent that the other person act on the solicitation.

Tex.Penal Code Ann. § 15.03(a), (b).

■ Appellant relies on section 15.03(b) in support of his argument that the evidence that was presented was insufficient to support his conviction. Appellant argues that each person that testified regarding the solicitation charges must be treated as an accomplice witness and as such there was no evidence presented that

would corroborate the accomplice testimony as is required by the statute. Corroboration is required regardless of whether the "person allegedly solicited to commit the crime" is an accomplice witness. *Varvaro v. State*, 772 S.W.2d 140, 143 (Tex. App.—Tyler 1988, pet. ref'd).

▮ The evidence presented demonstrated that Appellant had allegedly solicited Harrell, Longenecker, and Mayberry for the murder of Condello. The testimony of Jones and Owens was that Appellant talked about wanting something to happen to the witness in his case (Condello), but he did not directly ask them to kill Condello or find someone who would. If a State's witness has no complicity in the offense for which an accused is on trial, his testimony is not that of an accomplice witness. *Gamez v. State*, 737 S.W.2d 315, 322 (Tex. Crim.App.1987). Even if Harrell, Longenecker, and Mayberry could be viewed as accomplice witnesses, the testimony of Jones and Owens could have been viewed by the jury as strongly corroborative of both the solicitation itself and Appellant's intent that one of the persons solicited act on the solicitation. This testimony need not directly link the defendant to the crime or be sufficient in itself to establish his guilt. *Richardson*, 700 S.W.2d at 594. Viewing the testimony in the light most favorable to the verdict, we cannot say that the evidence was legally insufficient. The testimony of the State's witnesses was sufficient to satisfy the corroboration requirement. We overrule point one.

▮ In Appellant's second and third points, he argues that the evidence is legally insufficient to support his conviction for theft over $200,000 and money laundering.

Evidence presented at trial demonstrated that Appellant was introduced to the victim Carol Condello through his wife who was employed by her. Condello had recently inherited approximately $210,000 and Appellant offered to let her invest in AAA Cleaning, a carpet cleaning business.

Condello testified that she thought this would be a good investment because she was planning on purchasing rental properties for income and this would aid her venture. Therefore, she gave Appellant $175,000 over a three month period. Each time Condello gave Appellant money he gave her a "contract" allegedly signed by Appellant's son, the company's owner, purporting to give her an incrementally increasing ownership in the business.

Appellant's son later stated that Appellant was an officer of the business, had a hand in its day-to-day management, and frequently contributed money. He denied that Condello had ever contributed money to the business or that she had any interest in the business. He also denied ever seeing or signing the "contracts" given to Condello by the Appellant.

Testimony was also presented that Appellant told Condello that her phones were being tapped and offered to monitor the phones to determine who was doing the tapping in return for payment between $800 and $1,000 a month. Condello paid that amount and was given two phones with green lights on them. She testified that she was told by Appellant that she would know when the line was "safe" because the light would be green. The light was always green. A State expert testified that the phone was worthless for the stated purpose.

Appellant, knowing Condello made frequent trips to Pennsylvania for family business purposes, offered her an opportunity to purchase a plane and split the cost with him. Appellant told Condello that the plane would cost $200,000 so she gave him $100,000. Appellant purchased the plane for $103,500 in the name of Starglow Investments, in which Appellant was vice-president and his wife was president. Condello never received an interest in the ownership of the plane.

When Condello asked to use the plane, Appellant told her that her ex-husband had taken out a contract on her life. Appellant offered to "cancel" the contract for

$97,500, which was fifty percent more than what her ex-husband had allegedly paid for the contract. Condello feared her ex-husband because they had gone through a bitter divorce during the pendency of which her husband left almost daily threats on her answering machine, so she immediately paid Appellant. Condello's ex-husband testified that he had never hired anyone to kill her.

Appellant was prosecuted for theft by unlawfully appropriating property belonging to Condello in the value of over $200,-000, with the intent to deprive her of said property, under section 31.03 of the penal code. TEX.PENAL CODE ANN. § 31.03(a) (Vernon Supp.2000). Appropriation is unlawful if it is without the owner's effective consent. *Id.* § 31.03(b)(1). Consent is not effective if it is induced by deception. *Id.* § 31.01(3)(A). He was also prosecuted for:

INTENTIONALLY OR KNOWINGLY POSSESS[ING] AND CONCEAL[ING] THE PROCEEDS, TO WIT: MONEY, OF CRIMINAL ACTIVITY, TO WIT: THEFT OF PROPERTY OF THE VALUE OF OVER $100,000, KNOWING THAT SAID MONEY WAS THE PROCEEDS OF CRIMINAL ACTIVITY, AND THE VALUE OF THE FUNDS IS $100,000 OR MORE, [AND] ... INTENTIONALLY OR KNOWINGLY CONDUCT[ING] AND FACILITAT[ING] A TRANSACTION INVOLVING THE PROCEEDS, TO WIT: MONEY, OF A CRIMINAL ACTIVITY, TO WIT: THEFT OF PROPERTY OF OVER $100,000, KNOWING SAID MONEY WAS THE PROCEEDS OF CRIMINAL ACTIVITY AND THE VALUE OF THE FUNDS IS $100,000 OR MORE, AND THE TRANSACTION INVOLVED THE PURCHASE OF AN AIRPLANE....

*See* TEX.PENAL CODE ANN. § 34.02(a)(1), (2) (Vernon 1994). Both 34.02(a)(1) and (2) require that the defendant knowingly do something involving the proceeds of criminal activity. *See id.*

A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

*Id.* § 6.03(b).

Appellant's testimony during the trial consisted of claiming that Condello gave him $440,000, over eleven months, to act as a consultant regarding the purchase of rental properties. Appellant claimed that the police seized and never returned the records that would prove this agreement existed. Appellant also stated: that he never told Condello she would have an interest in AAA Cleaning; that he never took money from her to cancel the contract on her life; that he never had any conversations with her or took money from her for the airplane; and that although he did give her the telephones, he never told her that they would monitor her phone calls or took any money from her for this purpose.

■ Because Condello and Appellant told different stories, it was within the province of the jury to judge the credibility of the witnesses and determine the weight to be given their testimony. *See Jones v. State,* 944 S.W.2d 642, 647 (Tex.Crim.App. 1996), *cert. denied,* 522 U.S. 832, 118 S.Ct. 100, 139 L.Ed.2d 54 (1997); *Barnes v. State,* 876 S.W.2d 316, 321 (Tex.Crim. App.), *cert. denied,* 513 U.S. 861, 115 S.Ct. 174, 130 L.Ed.2d 110 (1994). After carefully reviewing the evidence, we cannot say that the evidence is legally insufficient because a rational jury could have found beyond a reasonable doubt that Appellant committed the theft and money laundering offenses. We overrule points two and three.

## II. DENIAL OF MOTION FOR NEW TRIAL

■ In his final point, Appellant argues that the trial court erred in denying

his motion for new trial based on newly discovered evidence. The decision to grant or deny a motion for new trial is left to the sound discretion of the trial court and in the absence of abuse of discretion an appellate court should not reverse. *Lewis v. State,* 911 S.W.2d 1, 7 (Tex.Crim. App.1995); *State v. Gonzalez,* 855 S.W.2d 692, 696 (Tex.Crim.App.1993). Additionally, motions for new trial based on newly discovered evidence are not favored by the courts and are viewed with great caution. *Drew v. State,* 743 S.W.2d 207, 225 (Tex. Crim.App.1987); *In re R.V., Jr.,* 8 S.W.3d 692, 693 (Tex.App.—Fort Worth 1999, pet. denied).

■■■ There are four requirements that Appellant must meet in order to qualify for a new trial based upon newly discovered evidence:

(1) the newly discovered evidence must have been unknown to the movant at the time of his trial; (2) the movant's failure to discover the evidence was not due to his want of diligence; (3) the materiality of the evidence is such as would probably bring about a different result in another trial; and (4) the evidence is admissible and not merely cumulative, corroborative, collateral, or impeaching.

*Etter v. State,* 679 S.W.2d 511, 514 (Tex. Crim.App.1984).

The newly discovered evidence in question is a statement Appellant made to law enforcement officers that Toney, another inmate, was soliciting inmates at the Tarrant County Jail to murder Condello. Appellant urges that this is newly discovered evidence because he did not realize that this could be related to his case and as such he did not inform his trial counsel of this statement. Appellant further alleges that it was the State's obligation to inform his trial counsel of this statement and they failed to do so. Accordingly, Appellant contends he should be granted a new trial.

It has been held that a trial court does not err in overruling defendant's motion for new trial based on newly discovered evidence when the defendant knows about evidence before trial, but chooses not to inform his attorney about it. *See Sawyer v. State,* 778 S.W.2d 541, 545 (Tex.App.— Corpus Christi 1989, pet. ref'd); *Zamora v. State,* 647 S.W.2d 90, 95 (Tex.App.—San Antonio 1983, no pet.). Appellant has failed to meet the first prong of the test because he has failed to show that this evidence was unknown to him before trial. Rather, the evidence presented by Appellant in his motion for new trial established that he did in fact know of the existence of the evidence in question. Appellant has failed to meet the fundamental requirement that the newly discovered evidence be unknown to him at the time of trial. *See Drew,* 743 S.W.2d at 226; *Sawyer,* 778 S.W.2d at 545. We overrule Appellant's fourth point.

### III. Conclusion

Having carefully considered all of Appellant's points, we have overruled each. We affirm the trial court's judgments.